United States District Court
Eastern District of Michigan
Southern Division

United States of America,

vs.

Case No. 2:18-cr-20075-2

Hon. Sean F. Cox

James Glenn Sharp,

       Defendant.

_____/

**Government's Sentencing Memorandum**

**I.    Introduction**

James Sharp, who has a 29-year history of crime, breached this Court's trust via numerous violations of his supervised-release conditions. Sharp possessed cocaine, used cocaine, lied to his probation officer, failed to reside at a probation-approved residence, failed to maintain employment, associated with another felon, failed to notify probation of police contact, failed to reside in a residential re-entry facility, and, most significantly, committed at least two felonies while on release. Sharp's sentencing guidelines at revocation would be higher but for the 24-month statutory maximum term of imprisonment. The

government recommends a 24-month custodial sentence, which is equal to Sharp's sentencing guideline.

## II. Facts

Sharp's interaction with the criminal-justice system began as a juvenile when he pleaded responsible to domestic violence and felonious assault in June and September 1996, respectively. He began amassing adult convictions beginning with possessing drug paraphernalia in 2001 at age 20. Presentence Report dated 5/6/2019, ¶ 28. Thus began an initial 16-year streak of repeat convictions — both misdemeanors and felonies — for drug possession and theft, through 2017. *Id.*, ¶¶ 28–48.

At some point during these 16 years, Sharp graduated to drug dealing. A law enforcement investigation identified Sharp's involvement in a 2016-17 drug-distribution conspiracy that involved fentanyl, heroin, and cocaine. *Id.*, ¶¶ 7–13. Sharp's participation involved supervising a drug-addicted female companion who delivered drugs on his behalf. *Id.*, ¶ 8. Sharp ultimately pleaded guilty to conspiracy to distribute and possess with intent to distribute controlled substances, 21 U.S.C. § 846. This Court sentenced him to 41 months in prison and three years of supervised release.

Sharp committed multiple violations while under this Court's supervision after that period of imprisonment. He pleaded guilty to allegations that he possessed cocaine (No. 3), used cocaine (No. 4), lied to his probation officer (No. 5), failed to reside at a probation-approved residence (No. 6), failed to maintain employment (No. 7), associated with another felon (No. 8), failed to notify probation of police contact (No. 8), and failed to reside in a residential re-entry facility (No. 9).

This Court held a hearing on May 22, 2025, regarding the unresolved allegation of new criminal activity (No. 1).[1] After reviewing two exhibits and hearing testimony of Sharp's probation officer, the Court found that Sharp assisted another felon, Erich Kuhns, in stealing jet skis and a trailer collectively worth $18,500 from an apartment complex in late April 2024, and in stealing a portable generator worth $4,000 from a construction site (damaging a building in the process) in early May 2024.

Notably, in early June 2024, after his arrest for these thefts, Kuhns told his probation officer that his association with Kuhns was

---

[1] The Court granted the government's request to dismiss allegation No. 2.

3

getting him in trouble and he needed to stay away from Kuhns. The probation officer admonished him to do just that. However, as the officer testified at the May 22 hearing, Canton Township officers encountered Kuhns and Sharp together in a parking lot in July 2024. Finally, in October 2024, Van Buren Township police arrested Sharp driving a stolen car and possessing drugs. *See* ECF No. 286, PageID.3859.

### III. Guidelines Calculation

Although the sentencing guidelines are advisory, the Court must begin its sentencing analysis by properly calculating the defendant's guideline range. *See United States v. Booker*, 543 U.S. 220, 245 (2005).

For the reasons the government outlines below, Sharp committed a Grade A violation while on supervised release. Sharp's criminal history category is VI. See Presentence Report dated 5/6/2019, ¶ 49. Accordingly, his guideline range would be 33 to 41 months. But because his original offense (the one on which he was on supervision) was a grade C offense, his statutory maximum term of imprisonment upon revocation of supervised release is two years. 18 U.S.C. § 3583(e)(3).

4

Accordingly, Sharp's sentencing guideline is 24 months. USSG § 7B1.4(b)(1).

Regarding the violation grade: Sharp has five felony convictions that preceded these supervised-release violations: two for possession of a narcotic, PSR, ¶¶ 35 and 41; two for larceny from a motor vehicle, *id.*, ¶¶ 40 and 44, and one for federal conspiracy to distribute controlled substances (the offense for which he was on supervision).

When the Court found, at the May 22 hearing, that Sharp had twice stole items, both of whose value exceeded $1,000, it implicitly determined that his supervision violations included the Michigan offense of larceny over $1,000. *See* Mich. Comp. Laws § 750.356(1)(a), (3)(a). That crime carries a statutory maximum of five years for a person with no prior felony convictions, but it is a life offense for a person such as Sharp who had *three or more prior felony convictions*. *See* Mich. Comp. Laws § 769.12(1)(b).

Accordingly, Court's finding that Sharp stole property valued at more than $1,000 (see amended violation report, ECF No. 286, PageID.3859) involves a grade A violation — "a federal, state or local offense punishable by a term of imprisonment exceeding twenty

5

years[.]" USSG § 7B1.1(a)(1). *See United States v. Childress*, 468 F. App'x 471 (6th Cir. 2012) ("[A] defendant's violation grade for revocation purposes is based on his sentence including any applicable habitual offender enhancement, not merely the sentence for the criminal act alone."); and *United States v. Montgomery*, 893 F.3d 935, 940 (6th Cir. 2018) ("The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct.").

### IV. Sentencing Factors

Congress provided the factors that courts must consider when imposing a sentence upon revocation in 18 U.S.C. §§ 3583(e) and 3553(a). The government addresses the most relevant factors below.

A.  *The history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1)*

Sharp is different than many defendants in that he readily admits that he had "a great youth." PSR, ¶ 55. Despite the fact that Sharp was close with both of his parents who "absolutely provided for all of his needs," Sharp turned to a life of crime. *Id.* In

6

addition to juvenile adjudications for domestic assault/abuse and felonious assault, *id.,* ¶ 59, Sharp has 23 convictions including the offense for which he was on supervision. *Id.*, ¶¶ 28–48. The sheer number is staggering, and the range of offenses shows Sharp's absolute disregard for society:

- Four drug-related convictions;
- Assault or assault and battery;
- Three malicious destruction of property convictions;
- Three larceny convictions;
- Eight retail fraud convictions; and
- Attempted assault of the police and interference with the police.

Sharp was on state supervision when he did the drug dealing for which this Court placed him on supervision. And he was on supervision to *this* Court when he committed the Washtenaw County offenses that were subject of allegation No. 1. Sharp's criminal record appears likely to keep growing. This factor weighs in favor of a guideline sentence.

7

B.  *The nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1)*

The nature and circumstances of Sharp's 2016-2017 offense were staggering. "The 'offense' so referenced [in 18 U.S.C. §§ 3583(e)] is the original offense of conviction[.]" *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (citing *Johnson v. United States*, 529 U.S. 694, 701 (2000)).

Opioids, including heroin and fentanyl, destroy communities. Contemporaneous with Sharp's offense, there were 2,335 overdose deaths in Michigan in 2016, up 18 percent from the 1,981 deaths in 2015. Karen Bouffard, THE DETROIT NEWS, *Drug deaths in Mich. increase 18%*, available at https://www.detroitnews.com/story/news/local/michigan/2017/07/13/drug-deaths-rise-michigan/103679404/. Of these 2,335 overdose deaths, 1,689 were opioid related—72 percent. *Id*. In 2012, there were 72 fentanyl deaths in Michigan: in 2017, there were 1,368. NAT'L INST. ON DRUG ABUSE, *Opioid-Involved Overdose Deaths* (revised March 2019), available at https://www.drugabuse.gov/opioid-summaries-bystate/michigan-opioid-summary.

8

We are not dealing with abstractions: During Sharp's conspiracy to distribute fentanyl with Brown, victim A.B. died from the fentanyl that Brown—and possibly Sharp—sold him. *See* ECF No. 97, PageID.816–17. "'Fentanyl overdoses can happen in *seconds to minutes*.'" Melinda Wenner Moyer, *As Fentanyl Overdoses Rise, How to Keep Loved Ones Safe*, N.Y. TIMES, May 19, 2022, available at https://www.nytimes.com/2022/05/19/well/live/what-is-fentanyl.html (emphasis added). Overdoses from other drugs like oxycodone and heroin, in contrast, "'typically take many minutes to hours.'" *Id.* This factor weighs in favor of a longer sentence.

C.   *Deterrence and protecting the public, 18 U.S.C § 3553(a)(2)(B)-(C)*

That Sharp committed the federal offense while on state supervision and committed felony state-law violations while on federal supervision show that supervision is insufficient to deter him from committing crimes. Supervision is also insufficient to protect the public from his behavior that puts the community in danger. The best hope to protect the public and deter Sharp is the maximum custodial sentence allowable.

9

## V. Conclusion

Sharp repeatedly breached this Court's trust by violating his conditions of supervision, including a grade A violation . He chose to associate with another felon, to steal, to possess and use drugs, and to lie to his probation officer. Upon finding a grade A or B violation, "the court shall revoke * * * supervised release." USSG § 7B1.3(a)(1). Accordingly, the government recommends the Court revoke Sharp's supervised release and sentence him to 24 months in custody, consistent with his 24-month sentencing guideline.

          Respectfully submitted,

          JEROME F. GORGON JR.
          UNITED STATES ATTORNEY

          /s/ Louis F. Meizlish
          Assistant United States Attorney
          211 W. Fort St., Suite 2001
          Detroit, MI 48226-3211
          313-226-9745
          louis.meizlish@usdoj.gov

Date:    May 29, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that I sent a true and accurate copy of the Government's Sentencing Memorandum to the attorneys of record via electronic filing.

/s/ Louis F. Meizlish
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226-3211
313-226-9745
louis.meizlish@usdoj.gov